ENDELL N. LEAKE V. LUCY A. LUCAS.*

FILED JULY 1, 1902.   No. 11,864.

Commissioner's opinion, Department No. 2.

1. **Husband and Wife: LIABILITY OF WIFE FOR MAINTENANCE OF SICK HUSBAND.** When a husband is actually a part of the family, living with it as such, and is temporarily helpless and incapacitated by illness, his maintenance and support, including necessary medical attendance, comes fairly within the rule of the statute which makes the wife liable as surety for necessaries furnished the family.

2. ———: ———: FOREIGN JUDGMENT AGAINST: RETURN OF EXECUTION NULLA BONA: CONDITION PRECEDENT. In such case, where the husband and family, including the wife, remove to a sister state, and no judgment can be obtained against him in this state, the obtaining of a judgment against him in the courts where he resides, causing an execution to issue thereon, and having it returned unsatisfied, is a sufficient compliance with the provisions of section 1, chapter 53, of the Compiled Statutes, to sustain an action against the wife to recover for such medical attendance.

ERROR from the district court for Dodge county. Tried below before HOLLENBECK, J. *Reversed.*

*Courtright & Sidner,* for plaintiff in error.

*Dolezal, Cook & Cook, contra.*

BARNES, C.

On the 23d day of February, 1900, the plaintiff commenced a suit in the district court for Dodge county against the defendant by filing the following petition (omitting title):

"Comes now the plaintiff and for cause of action herein states:

"1st. The plaintiff is now and for more than seven years last past has been a duly authorized and practicing physician in Fremont, Dodge county, Nebraska.

*Rehearing allowed. Reversal adhered to. See opinion, page 365, post.*

"2d. During the year 1896 and early part of 1897 the plaintiff herein furnished medicine and medical attendance to William A. Lucas for and at the request of William A. Lucas, in said county, which medicine and medical attendance was of the value and agreed price of $38.50.

"3d. Thereafter on October 31, 1899, judgment was recovered against said William A. Lucas by the plaintiff herein for $38.50 in Howells county, Missouri, where said defendant and William A. Lucas her husband, then resided and where they still reside.

"4th. Thereupon a transcript of said judgment was filed in the circuit court of said Howells county, Missouri, the same being a court of general jurisdiction and of the same jurisdiction and powers as the district court of Nebraska, and an execution issued thereon commanding the sheriff of said county to levy the same upon the goods, chattels, lands and tenements of said William A. Lucas. Said execution was thereafter returned by the said sheriff with his return thereon showing no property, goods, chattels, lands or tenements of said William A. Lucas could be found in said county upon which to levy.

"5th. The defendant herein is, and for more than ten years last past has been the wife of said William A. Lucas. And at the time of furnishing said medicine and medical attendance the defendant herein and the said William A. Lucas were living together in Fremont, Nebraska, as husband and wife.

"6th. Said medicine and medical attendance were necessary for the defendant's family.

"7th. No part of said judgment and no part of the value of said medicine and medical attendance has been paid and the whole thereof is now due and payable.

"8th. There is now due and unpaid from defendant to plaintiff upon said judgment and for said medicine and medical attendance the sum of $38.50 and interest thereon from July 1, 1897.

"9th. At the time of furnishing said medicine and medi-

cal attendance the defendant was the owner and held a fee title to lots four, five and six, block three of East Side addition to the city of Fremont in Dodge county, Nebraska, and pledged said property for the payment of said debt.

"10th. Neither the defendant nor said William A. Lucas have any personal property within Dodge county, Nebraska, nor within the state of Nebraska, and the said William A. Lucas has no real estate in Dodge county, Nebraska, nor in the state of Nebraska.

"Wherefore plaintiff asks judgment against the defendant for the sum of $38.50 with interest thereon at seven per cent. per annum from July 1, 1897, and costs, and that said judgment be decreed to be a lien upon said real estate, and for such other and further relief as equity may require."

At the same time he procured an attachment to be issued and levied upon the property of the defendant, situated in said county, and thereupon obtained service against her by publication. She appeared in the case, and filed a general demurrer, which was overruled, and thereafter she filed an answer to the petition, in which she admitted the third and fourth paragraphs thereof, and denied all of the other allegations therein contained. She further answered as follows: "Further answering for another and further defense this defendant avers the property in this action attached being lot 4 of block 3, of East Side addition to the city of Fremont, lot 5 in said block 3 and lot 6 in said block 3 is the sole and separate property of the defendant, and was acquired by her through and by means of a conveyance of the same to her from persons other than her said husband, William A. Lucas; and that the same is not liable for the debts of the said William A. Lucas." Upon the issues thus made the cause was tried to a jury. At the close of all of the evidence the court held that the medical services, which were the basis of the plaintiff's cause of action, were not necessaries furnished the family of the said defendant; that

the plaintiff had not complied with the law, and first obtained a judgment against the husband for the indebtedness sued on in this action, and had an execution issued and the same returned unsatisfied for want of goods, chattels, lands and tenements whereon to levy and make the same, and thereupon directed the jury to return a verdict for the defendant, which was accordingly done. The plaintiff's motion for a new trial being overruled, he brought the case here on a petition in error. The evidence sustained all of the allegations of the petition, except the one which charged that the defendant had pledged her separate property for the payment of the debt. Upon that point the evidence shows that the husband made the request for the services.

1. The plaintiff contends that the medical attendance and services in question furnished by him to the defendant's husband, were necessaries furnished the family of the defendant, within the meaning of section 1, chapter 53, of our statutes. It was established on the trial that at the time the plaintiff attended the defendant's husband they resided together at their home in Fremont, Dodge county, Nebraska, and were maintaining their home and family relations as husband and wife; that the members of the family were William A. Lucas, his wife, the defendant herein, and defendant's mother; that the said Lucas was ill with rheumatism and unable to get about or help himself in any particular. It would seem that the medical attendance necessary to cure defendant's husband of his illness and thus place him in a position to labor, and support the family, herself included, was a necessary furnished for its benefit. The husband, although the head of the family, while living with his wife, maintaining the family relations and keeping up the home, is certainly a part and a member of it. There can be no doubt but that the defendant would be liable as surety for her husband for the necessary food furnished the family, himself included. It would seem to be necessary, and for the benefit of the family, that the husband be cured of his temporary

illness so as to be able to earn the means with which to pay for such food, and thus relieve the defendant of that charge. We do not intend to establish a rule of law by which we shall be conclusively bound in such cases hereafter, for every decision upon this question must necessarily be largely governed by the facts existing in the particular case in which it is rendered. In this case we are unable to see why defendant should not be held liable as surety for necessary medical attendance furnished to her husband when temporarily disabled by illness. In the case of *Wailing v. Toll,* 9 Johns. [N. Y.], 141, it was held that medicine and medical attendance was a family necessary. In that case the medicine and attendance had been furnished by the plaintiff to a daughter while she was a minor living with her father. The court held that the father was liable therefor, notwithstanding the medicine and attendance had not been requested by him, because it was a family necessary. The statutes of the state of Iowa make a husband and wife jointly liable for the necessary family expense. In the case of *Murdy v. Skyles,* 70 N. W. Rep. [Ia.], 714, the supreme court of that state held that a claim for medical services rendered the husband was a family expense, for which the husband and wife were jointly and severally liable. This is the first time this question has been before us, and we find but little authority upon it elsewhere. We ought to give the statute a reasonable construction, and we therefore hold, under the facts in this particular case, that when the husband is actually a part of the family, living with it as such, and is for some reason temporarily incapacitated by illness, his maintenance and support, including medical attendance, comes fairly within the rule of the statute which makes the wife liable as his surety therefor.

2. Plaintiff claims that he has complied with the statute; that he procured a judgment against the defendant's husband; caused an execution to be issued thereon; and that the officer had returned the same unsatisfied, for want of goods and chattels, lands and tenements whereon

to levy and collect the same,—and thus fixed the defend-
ant's liability before he commenced this suit. It was es-
tablished upon the trial that shortly after the medical at-
tendance was furnished to defendant's husband he recov-
ered, and, with the defendant and the rest of the family,
moved to the state of Missouri; that they made a home
there, continued the family relations, and were living in
said state at the time this action was commenced; that
the husband owns no property in this state; that no action
can be commenced or judgment obtained against him here,
because no service of summons can be made upon him
which will give the courts of this state jurisdiction to
render a judgment against him. It is apparent, then, that
it would be an impossibility for the plaintiff to obtain a
judgment against the defendant's husband in this state.
A judgment was regularly obtained against him in the
state where he resides, and was transcripted to the proper
court, and an execution was issued thereon, which was
returned by the proper officer unsatisfied for want of
goods and chattels, lands and tenements whereon to levy
and make the same. Strictly speaking, this judgment is
not a judgment in this state until suit is brought thereon
as the judgment of a sister state, and the same has been
reduced to a judgment here. It is clear that this can not
be done, because, as we have stated, there is no way to get
service on the judgment debtor in this state. The plain-
tiff, therefore, has exhausted every remedy and taken
every proceeding open to him against the husband of the
defendant. It further appears that the defendant owns
all of the property possessed by the family, and has the
title to the real estate attached in this action. It remains
for us to determine whether or not there has been such a
compliance with the statute as will support this action.
A judgment obtained in the state of Missouri is as much
a judgment as though obtained in the courts of this state.
It is true, it is not a judgment of the courts of this state
until an action has been brought thereon, and some court
in this state has rendered judgment in such action. In

-such an action the judgment of the court of the sister state
is recognized as having such force that practically no de-
fense can be made against it but the defense of fraud in
obtaining it.   Again, the constitution requires the courts
of this state to give full faith and credit to the judgments
of the courts of our sister states.   The maxim that the law
does not compel the impossible applies with much force
in this case.   We ought to give the statute a fair, common-
sense construction.   When it says a judgment shall be ob-
tained and an execution issued and returned unsatisfied,
it should be held to mean that a judgment shall be ob-
tained in the place or jurisdiction where it can be ob-
tained; there is nothing in the terms of the statute itself
which would seem to require us to hold otherwise.

We therefore hold that there has been sufficient com-
pliance with the requirements of section 1, chapter 53, of
our statutes, to authorize the plaintiff to maintain this
action against the defendant; that the trial court erred in
directing the jury to return a verdict for the defendant.
We therefore recommend that the judgment of the dis-
trict court be reversed and the cause remanded for a new
trial.

POUND, C., concurs.

By the Court: For the reasons stated in the foregoing
opinion, it is ordered that the judgment of the district
court be reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

The following opinion on rehearing was filed on March
4, 1903:

Commissioner's opinion, Department No. 3.

1. **Husband and Wife:** MEDICAL ATTENDANCE: FAMILY NECESSITY:
    STATUTE.  The husband, while living with his wife, is part of
    the family, and medical attendance of which he stands in need
    is a family necessity, within the meaning of section 1, chapter
    53, of our Compiled Statutes.

2. ———: ———: ———: ———: REMOVAL TO SISTER STATE: JUDG-
MENT AGAINST HUSBAND: EXECUTION: RETURN NULLA BONA.
Where medical attendance is furnished the husband under the
circumstances mentioned in the first headnote, and while the
family are residing in this state, and the family afterward re-
move to a sister state, a judgment against the husband in the
state to which he has removed, and the return of an execution
unsatisfied, is a sufficient compliance with our statute to entitle
the creditor to proceed against the wife for the collection of
his demand.

DUFFIE, C.

The former opinion, delivered by Commissioner BARNES,
of the Second Department, will be found on page 359, *ante*,
and is so full in its statement of the facts that nothing fur-
ther in that respect is needed. The statute before us for
construction is in the following words: "The property, real
and personal, which any woman in this state may own at
the time of her marriage, and the rents, issues, profits, or
proceeds thereof, and any real, personal, or mixed prop-
erty, which shall come to her by descent, devise or the gift
of any person except her husband, or which she shall ac-
quire by purchase or otherwise, shall remain her sole and
separate property, notwithstanding her marriage, and
shall not be subject to the disposal of her husband, or lia-
ble for his debts; Provided, That all property of a mar-
ried woman not exempt by law from sale on execution or
attachment shall be liable for the payment of all debts
contracted for necessaries furnished the family of said
married woman after execution against the husband for
such indebtedness has been returned unsatisfied for want
of goods and chattels, lands, and tenements whereon to
levy and make the same." Compiled Statutes, ch. 53, sec.
1. As we understand from brief and oral argument of
counsel for defendant in error, two objections are urged
against the construction given to the statute in the former
opinion: First, that it is erroneous in holding that it was
intended to make the property of the wife liable for neces-
saries furnished the husband alone, and for his individual
use; second, that it is wrong in holding that the return of

an unsatisfied execution against the husband on a judg-
ment rendered against him by a court of a sister state, is
a compliance with the statutory requirement relating to
proceedings to first collect from the husband.   After a
failure to collect from the husband, the property of a mar-
ried woman not exempt by law from sale on execution or
attachment shall be liable for the payment of all debts
contracted for necessaries furnished the family of said
married woman.   So reads the statute.   Who constitutes
her family?   Webster defines a family as "a collective
body of persons who live in one house and under one man-
agement."   The supreme court of Connecticut says that
in a broad sense the word "family" may include all the
person's children whether living with him or not, and even
other relatives; but in a more limited sense it includes only
those who are living together as one household.   *Hart v.
Goldsmith,* 51 Conn., 479.   In its limited sense the word
"family" signifies the father, mother and children.   *Galli-
gar v. Payne,* 34 La. Ann., 1057.   In the present case there
is no need to determine the exact sense in which the word
"family" is used in the statute under consideration, be-
cause it includes the father, mother and children of the
household in its most limited signification.   There can
be no doubt that the word "family" includes the husband,
and that "necessaries" furnished him for his individual
use, are furnished the family within the meaning of the
statute.   That medical attendance furnished the husband
alone is a family necessary is held in the following cases:
*Cole v. Bentley,* 26 Ill. App., 260; *Walcott v. Hoffman,*
30 Ill. App., 77.

The defendant in error relies largely on *Gabriel v.
Mullen,* 30 Mo. App., 464, in support of her theory that
medical services rendered exclusively to the husband are
not "necessaries for the wife or family," within the
meaning of the Missouri statute, which is practically like
our own except in the method provided for enforcing the
claim against the property of the wife.   Even if the rea-
soning in that case were satisfactory, it can no longer be

regarded as an authority upon the question, the case having been certified to the supreme court, where the opinion of the appellate court was disapproved, and the rule announced that "medical services to the husband and children are 'necessaries for the family' within the meaning of that statute." *Gabriel v. Mullen,* 111 Mo., 119. Neither can we see anything inequitable in the law. It must be borne in mind that this statute is a part of the law relating to married women, and defining their property rights. Prior to the enactment of chapter 53 of our statute all the personal property of the wife, the income from her real estate, passed to the husband on her marriage, and became liable for his debts of every description. That the legislature, in giving her absolute title to the property owned by her at the date of her marriage, and exempting it from liability for the payment of her husband's general indebtedness, should leave it liable for debts contracted for "necessaries for the family" which the husband is unable to pay is not unreasonable. The husband can not subject her separate estate to liability for debts contracted by him in riotous living, or for anything but necessaries furnished the family, and for these equity and justice require that she should pay when the husband is unable to do so, rather than require that a stranger or the public should assume the burden.

2. Was a judgment against the huband obtained in Missouri, and the return of an execution unsatisfied "for want of goods, chattels, lands and tenements whereon to levy and make the same," a sufficient compliance with our statute before proceeding against the wife to collect the indebtedness? We think it was. It must be borne in mind that the debt was contracted while the husband and wife were residents of Nebraska. Had they remained residents of this state, and an unsuccessful attempt been made in the courts of this state to enforce the debt against the husband, no question is made that the property of the wife would be liable. The husband had no property here which could be reached by the process of our courts, and

the necessities of the case compelled the plaintiff to resort to the court in Missouri to obtain judgment against the husband. It is said that the holding in the former opinion "enlarges the liability of the wife, and makes her liable in this state on a chose in action against the husband." That a foreign judgment is a mere chose in action in the sense that it must be sued on in this state can not be denied; but we think that the defendant in error misapprehends the purpose of our statute in requiring an unsuccessful attempt to be made by the creditor to first collect from the husband before resorting to the property of the wife. The action is not on the judgment, but on the original debt. The judgment and return upon the execution are evidence merely that the husband has no property, and can not pay. The husband is primarily liable for the support of the family. It was the intention of the legislature to require the creditor to enforce this liability against him if he had property which could be reached. The best evidence that the husband could not be made to respond is a judgment and the return of an unsatisfied execution. We think that such proceeding against the husband was required as evidence that the creditor had made a bona-fide and unsuccessful attempt to collect his demand from the party primarily liable therefor. For this purpose a judgment and an unsatisfied execution returned thereon from a court in Missouri is of equal weight with a domestic judgment on which execution has issued and been returned unsatisfied for want of property on which to levy.

We are satisfied that the former opinion was right, and that it should be adhered to.

AMES and ALBERT, CC., concur.

By the Court: For the reasons above stated the former opinion in this case is adhered to.