[No. 11753.   Department One.   March 25, 1914.]

ANGUS HAY, *Respondent*, v. T. V. LONG *et al.*, *Appellants*.[1]

LANDLORD AND TENANT—LEASE—PARTIES—EXECUTION—EVIDENCE—SUFFICIENCY. A lease, executed by the lessor's attorney in fact to his wife, and a few days later assigned to a third party, is not shown to have been made in the first instance to the assignee, and only taken in the name of the agent's wife for the assignee's convenience, where the lease called for rent at but $5 per month, and the assignee agreed to pay $15 per month in case he used the building as a store, the excuse for taking it in the name of the agent's wife was that the assignee desired to conceal his identity, which however he disclosed the next day by offering the assignment for record, and the evidence tends to show that the assignment was an afterthought to evade the possible voidability of the original lease.

PRINCIPAL AND AGENT—CONTRACTS OF AGENT—VALIDITY. A lease, executed by the lessor's attorney in fact to his wife, not engaged in separate business, being presumptively a lease to the community, is voidable as a lease by an agent to himself.

SAME. A lease by an attorney in fact to his wife is voidable at the instance of the principal, on the ground of the relationship of the lessee to the agent.

LANDLORD AND TENANT — LEASE — ASSIGNMENT — BONA FIDE PURCHASER—NOTICE OF INFIRMITY. The assignee of a lease, executed by the lessor's agent to his own wife, takes with notice of the lessor's right to repudiate the lease, where he knew the relationship between the parties.

SAME—LEASE—BY AGENT — REVOCATION OF AUTHORITY — ASSIGNMENT. The fact that an assignment of a voidable lease was not recorded until twelve days after a prompt revocation of the power of attorney authorizing a lease, is presumptive proof that it was executed immediately prior to its recording.

[1]Reported in 139 Pac. 761.

DAMAGES—DUTY TO REDUCE. Plaintiff cannot recover damages for loss of goods stored in a shed, which he left to the elements and might have saved, after defendant tore down the shed.

Appeal from a judgment of the superior court for Benton county, Holcomb, J., entered July 2, 1913, upon findings in favor of the plaintiff, in an action for equitable relief. Reversed.

*Moulton & Henderson*, for appellants.

*Linn & Boyle*, for respondent.

CHADWICK, J.—The plaintiff and defendants Long are owners of adjoining lots, in the unincorporated town of White Bluffs, Washington. A frame store building stands upon each lot, with an intervening space of five feet. This space was utilized by plaintiff, who had put a plate rail along the side of each building, with boards cut of sufficient length to reach from one building to the other. This was covered with roofing. It was enclosed at the front and back and was occupied by plaintiff for storage purposes. One Athow was attorney-in-fact for the defendants Long at all times prior to the 16th day of May, 1912. It is claimed by plaintiff, and the court so found, that, on the 7th day of May, 1912, Athow negotiated with plaintiff for the lease of the building owned by defendants; that, for reasons best known to themselves, plaintiff demanded, and it was agreed, that the lease be taken in the name of Mrs. Athow; that, thereafter, on the 12th day of May, 1912, a written lease of the property was made by Athow as attorney-in-fact for the defendants and delivered to him; that, on the 13th day of May, the lease was assigned by Mrs. Athow; that the instruments were immediately forwarded for record in the office of the county auditor. The lease was recorded on the 27th day of May; and following the execution of the lease and its assignment, the plaintiff put some kindling stuff and bee material in the building,

and subsequently stored other property. At these times, Athow had notice that the Longs might dispose of the property, and had telegraphed them on May 12:

"I have rented building—for one year letter will follow—beware"

On the 13th day of May, the defendants Long executed a revocation of their power of attorney to Athow, and forwarded it to the county auditor where it was recorded on the 15th. The lease was returned to Athow by the county auditor, and thereafter Athow sent it back to him with the assignment and with directions to record the assignment. Acting upon the theory that the lease was voidable, defendants Long employed the defendant Beautrow to move the building to a new town site near by, the town of White Bluffs. Beautrow began his work of removal, and in so doing tore the roof between the buildings loose from the Long building, whereupon, plaintiff brought this action to restrain the removal of the building, and for damages. The court found that the lease was executed in good faith, and was valid and binding upon the defendants Long, made the restraining order theretofore issued permanent, and entered a judgment for damages in the sum of $25. From this decree, defendants have appealed.

Several assignments of error are made, but, as we view the case, it will be unnecessary to discuss all of them. We think the court erred in holding that a lease valid and binding on the parties was entered into on the 7th day of May. It may be, although it is extremely doubtful, that the parties had some negotiations at the time, but the contract was not formulated, nor did it become binding as between Athow and plaintiff until it was executed on the 12th day of May. If the contract was made, as respondent says it was, on the 7th day of May and the lease written on May 12th in Mrs. Athow's name to suit his convenience in some collateral matter, it would seem that it would have detailed the terms of the contract as both he and Athow say they were agreed upon, that is, that he was to pay $5 per month in any

event and $15 in the event that he used the building for a store. The lease as written is for $5 per month without qualifications. The promise to pay the $15 appears for the first time in the assignment. It seems to us that this circumstance furnishes strong presumptive proof that the lease does not evidence the contract between plaintiff and Athow, and that terms were not agreed upon on May 7th, or at any time prior to the 13th.

Another circumstance that tends to detract from plaintiff's position is that he says that it was understood on the 7th and on the 12th, when the lease was written, that it should be taken in the name of Mrs. Athow for the reason that he hoped to secure some financial assistance from relatives in the east; that they were exacting, and his interests demanded, that his name be concealed. If we admit that the reason urged has any force whatever, we are met by the fact that, on the very next day after he was careful to conceal his identity as a contracting party, he reveals it by taking an assignment in his own name and offering it, as he contends, along with the lease, and certainly within a few days thereafter, for public record. No reason is assigned for this by plaintiff. This fact lends some color to the theory of the appellant that the assignment was an afterthought and was executed because of the possible voidability of the original lease.

That a sale by an agent to himself, either directly or through the intervention of a third party, is voidable, is so well settled as to require no citation of authority. In the instant case, Athow leased to his wife. There is nothing in the record to show that Mrs. Athow has at any time done business in her own name or upon her own account. Under the community property statutes, her act was presumptively the act of the community and that presumption has not been rebutted. *Main v. Scholl*, 20 Wash. 201, 54 Pac. 1123; *Johns v. Clother, ante* p. 602, 139 Pac. 755. The lease made by Athow was a lease to the community and was therefore

a lease to himself. But if it were not so, it has been held that a contract made by an agent with his wife is voidable at the instance of a *cestui que trust* or a principal, "not on the ground of coverture, but of her relationship to the trustee. It would be evidence of unfairness quite as much as if the sale were made to the trustee himself, and falls within the spirit of the rule which forbids his own purchase." *Dundas's Appeal*, 64 Pa. St. 325.

"The doctrine is familiar, and has been often recognized by this court, that an agent cannot, either directly or indirectly, have an interest in the sale of the property of his principal which is within the scope of his agency, without the consent of his principal, freely given, after full knowledge of every matter known to an agent which might affect the principal; *Coat v. Coat*, 64 Ill. 74; *Ebelmesser v. Ebelmesser*, 99 Id. 548; *Zeigler v. Hughes*, 55 Id. 288; *Hughes v. Washington*, 72 Id. 85. It is of no consequence, in such case, that no fraud was actually intended, or that no advantage was in fact, derived from the transaction by the agent; Kerr on Fraud and Mistake (Bump's ed.), 173, 174; Perry on Trusts, sec. 206; Story's Eq., sec. 315; Bispham's Eq. (2d ed.), p. 299, sec. 238. The rule is not merely remedial of wrong actually committed,—it is intended to be preventive of wrong. Public policy requires, as was tersely and forcibly said by the Chief Justice in *Staats v. Bergen*, 2 C. E. Green. 554, that 'a trustee may not put himself in a position, in which, to be honest, must be a strain on him.' An agent may undoubtedly buy of his principal, or have an interest in the sale of property belonging to his principal; but in such case the burden is upon the agent to show that the principal had knowledge, not only of the fact that the agent was buying or interested, but also of every material fact known to the agent which might affect the principal, and that, having such knowledge, he freely consented to the transaction:" *Tyler v. Sanborn*, 128 Ill. 136, 21 N. E. 193, 15 Am. St. 97, 4 L. R. A. 218.

It is against the policy of the law to encourage an agent or a trustee to deal with property through the mediumship of those in close relationship and having a like interest with himself. The only question, then, to be determined, is, was

plaintiff an assignee in good faith? He had personal knowl-
edge of the transaction. He knew the relationship existing
between the parties. He knew the transaction as between
defendants and the Athows was voidable, and that, by ref-
erence to our statute defining community and property
rights, under these circumstances, the lease bore

". . . upon its face its own condemnation. It is *prima
facie* void, and as between the parties the principal is not
bound by the deeds, and may repudiate the transaction and
recover the land. Public policy will not tolerate such mis-
doings on the part of an agent, and courts will not stop to
inquire whether a fraud was intended, but, looking alone at
the relation of the parties, will, upon that relation appear-
ing, declare the conveyance invalid." *McKay v. Williams*, 67
Mich. 547, 35 N. W. 159, 11 Am. St. 597.

After further discussing upon a state of facts not dis-
similar to the facts in this case, the supreme court of Mich-
igan, in the same case, says:

" 'The law esteems it a fraud in such a trustee to take,
for his own benefit, a position in which his interest will con-
flict with his duty.' It cannot be claimed that Mrs. Wil-
liams is a good-faith purchaser, without notice of the in-
validity of her grantor's title. A purchaser of real estate
is bound by what appears in the chain of title through which
he claims. The defendant was chargeable with notice of
the fraud which appeared upon the face of the conveyances."

Furthermore, accepting plaintiff's statement that he had
the lease drawn in the name of Mrs. Athow as true, he con-
sented to assume the burdens which the law attaches to
transactions between parties acting in confidential relation,
one to the other, and if, pending a formal assignment of the
lease to him, the authority under which it was executed was
repudiated, his rights thereunder, if any, terminated. We
are not convinced that the assignment of the lease was made
on the 13th day of May. At any rate, plaintiff has not sus-
tained the burden of proof on that particular question. We
are satisfied that it was not attached to the lease when it

was sent to the county auditor for record. A letter written by Mrs. Athow to defendant Louise Long (Mrs. Athow generally corresponded on behalf of her husband) on the 10th day of May shows that the Athows had been and were at that time endeavoring to lease a part of the property to another person, but that the lease of even that part of the property was problematical. Nothing is said in the letter of a lease to plaintiff or to the writer of the letter on the 7th day of May. The person who drew the lease has no recollection of an assignment at the time the lease was drawn. The assignment by Mrs. Athow purports to have been approved by her husband, notwithstanding the fact that the lease contains a stipulation that no assignment will be valid unless it is approved by the lessor. If the lease had been made to some third person, the assignment by the attorney-in-fact might have met this stipulation; but in the absence of a showing of positive good faith, we cannot hold that an attorney-in-fact can, as against his principal, approve an assignment of a lease made by him to his own wife. The fact that the assignment was recorded on the 27th day of May, twelve days after the revocation of the power of attorney had been recorded, is strong presumptive proof that it was executed immediately prior thereto, for the whole record shows an anxiety on the part of the plaintiff and Athow to cover the property by a contract that would prevent its removal, and a promptness in forwarding the lease that would have begotten a like energy in the transmission of the assignment if in fact it had been executed at that time.

Another burden which the law attaches to plaintiff in this matter is that he had notice, or was bound to take notice, of the privilege defendants Long had of repudiating the voidable lease. The law which demands good faith in all things, demanded of him that he season his transaction with the approval of the real parties in interest, rather than

that of their agent, who was acting in his interest and in defiance of the will of his principals.

As for the damages in the case, it may be said that, if defendants Long had a right to move their building at all, they had the right to detach it from the structure made by plaintiff, doing no unnecessary damage. While plaintiff details a state of facts that would warrant the imposition of a judgment in an even greater sum than was allowed by the court, the greater number of witnesses have testified to a state of facts that would not warrant the imposition of that or any other sum. This, coupled with the fact that, whatever damages plaintiff might have suffered could have been avoided if he had seen fit to do so, is enough to warrant a denial of a recovery in any sum at all. The law insists that one who is damaged shall do what he can to minimize his damages. Plaintiff admits that he did not take care of his property in any way, but left it to the elements, upon the theory that, the shed between the buildings being torn down, he had no right to touch it.

Reversed, with instructions to dismiss.

CROW, C. J., ELLIS, MAIN, and GOSE, JJ., concur.