[Civ. No. 3000.   Third Appellate District.—December 21, 1925.]

JOSIE E. M. NIELSEN, Appellant, v. LUCY V. RICHARDS,~ as Auditor of the County of Butte, etc., Respondent.

[1] SCHOOL LAW — EMPLOYMENT OF TEACHER — CONTRACT BETWEEN COUNTY SUPERINTENDENT OF SCHOOLS AND HIS WIFE AS TEACHER— PUBLIC POLICY.—A contract entered into between a county superintendent of schools and his wife, by which the latter was appointed as supervising teacher in the schools of such county at a stated annual salary, including traveling expenses, is prohibited by law and contrary to public policy.

---

(1) 25 C. J., p. 175, n. 67 New; 35 Cyc., p. 954, n. 16, p. 1082, n. 32 New; 38 Cyc., p. 949, n. 30.

APPEAL from a judgment of the Superior Court of Butte County. H. D. Gregory, Judge. Affirmed.

The facts are stated in the opinion of the court.

---

1. See 13 Cal. Jur. 804; 21 Cal. Jur. 823; 21 Cal. Jur. 886.

Ware & Ware for Appellant.

Wm. E. Rothe, District Attorney, and Clinton Johnson, Assistant District Attorney, for Respondent.

PLUMMER, J.—Action by petitioner to secure a writ of mandate directing the respondent, as the Auditor of the County of Butte, to audit, approve, and allow a certain warrant issued and delivered to petitioner by C. H. Nielsen, the county superintendent of the county of Butte, for and on account of a certain contract purporting to employ the petitioner as a supervising teacher of rural schools in the county of Butte. Respondent had judgment and the petitioner appeals.

The record shows that during all the times referred to in this proceeding C. H. Nielsen was the superintendent of schools of the county of Butte; that the petitioner was a qualified teacher of the county of Butte, holding a valid certificate authorizing her to teach in said county; that during all the times referred to the petitioner, Josie E. M. Nielsen, and C. H. Nielsen, the county superintendent of said county, were husband and wife.

On or about the first day of September, 1923, the said C. H. Nielsen and the petitioner herein entered into a contract purporting to employ the petitioner as a supervising teacher of rural schools in said county, which contract was in the words and figures following, to wit:

"I, C. H. Nielsen, Superintendent of Schools, Butte County, State of California, hereby appoint Mrs. Josie E. M. Nielsen as supervising teacher in the schools of Butte County for the term ending June 1, 1924, at an annual salary of Three thousand three hundred ($3300) Dollars, ($2700 of which is designated as salary and $600 as traveling expenses), one-ninth of which salary shall be payable on the first of each calendar month following the first of September until nine payments shall have been made. The above payments shall be made in requisitions drawn upon the county auditor by me upon the supervision fund of Butte County.

" (Signed)     C. H. NIELSEN,
"Superintendent of Schools.

"Dated Sept. 1, 1923.

"I hereby accept the conditions stated above and agree to serve as supervising teacher in the Butte County schools for the term specified above.

"(Signed)    Josie E. M. Nielsen."

At the conclusion of the trial of the action the court made certain findings as to the official character of the said C. H. Nielsen, of the relationship existing between the petitioner and the said C. H. Nielsen, the fact that there was money in the county treasury of the county of Butte available for paying the claims of a supervising teacher, the issuance of a warrant by the superintendent of schools, and the refusal of the respondent to audit the claim of the petitioner, and, also, the execution of the writing which we have hereinabove set forth. The trial court then made the following finding, to wit: "That prior to and before the execution and acceptance of said purported employment of said petitioner, the said petitioner, and the said C. H. Nielsen, had conversations wherein, and as a result of which the said C. H. Nielsen agreed that all money which his wife should earn teaching school under said purported employment should become her own money and that he would have and claim no interest whatever in any money earned by his said wife under said purported employment as supervising teacher in the county of Butte." Based upon the findings to which we have referred, the court drew its conclusions of law that the purported employment was illegal and void, and entered judgment for the respondent.

Based upon section 157 of the Civil Code, which reads: "Neither husband nor wife has any interest in the property of the other, . . . " and section 158 of the Civil Code, which reads, "Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; . . . ," and also upon section 159 of the Civil Code, which reads, "A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, . . . ," it is argued by the appellant that under the findings of the trial court set forth, the agreement of the parties that whatever salary the petitioner might earn as a supervising teacher of the county of Butte was to be her

separate property, the contract is free and clear of any legal inhibitions whatever.

The respondent rests her case upon section 920 of the Political Code, which specifies that members of the legislature, state, county, and township officers must not be interested in any contract made by them in their official capacity, or by any body or board of which they are members and section 71 of the Penal Code, making executing contracts in which an officer is interested a penal offense.

One phase of this controversy was before this court in the case of *Nielsen* v. *Richards*, 69 Cal. App. 533 [232 Pac. 480]. No question was presented in that case as to the relationship of the parties, or the interest of the school superintendent in the contract entered into by him with petitioner, employing her as a supervising teacher of rural schools in the county of Butte. The questions decided related to whether the provisions of the law providing for supervising teachers were valid and applied to the county of Butte and, also, as to the power of the county school superintendent to employ such teachers and fix their compensation. These questions were resolved in favor of the petitioner. The validity of the petitioner's appointment was not itself passed upon, as there was nothing in the record showing the relationship of husband and wife existing between the petitioner and the superintendent of schools of the county of Butte at the time of the employment and the execution of the contract set forth in the opinion of the court in the case just referred to.

Examination of the contract of employment brings to our attention serious questions affecting its validity. We will first consider the provision for "traveling expenses" and what is written into the contract by those words. The contract expressly states that in the fixing of the salary at the sum of $3,300, an item of $600 is inserted therein to cover traveling expenses, or, as said in the opinion deciding the first phase of this case presented to us, "The evident intention of the parties to the contract, inartificially expressed in the parenthetical clause, is that the petitioner shall be paid an annual salary of $3300, she to pay her own traveling expenses, estimated to be $600 a year."

The words "traveling expenses" have a definite legal meaning in reference to officers and employees traveling from place

to place in the state of California, and include not merely means of locomotion or transportation, but room rent and meals. This question was definitely settled by the supreme court in the case of *Corbett* v. *State Board of Control,* 188 Cal. 289 [204 Pac. 823]. In deciding that case the supreme court said:

"If the meaning of the phrase 'traveling expenses' prevents its application to anything except expenses paid for some kind of locomotion or conveyance, doubtless this interpretation might be sustained. But it is a familiar rule of statutory construction that words and phrases are construed according to the approved usage of the language, and that words of common use are to be taken in their ordinary and general sense. (*Gross* v. *Fowler,* 21 Cal. 396; Pol. Code, sec. 16.) Ever since the year 1878 the law has provided that the members of the supreme court shall be allowed their 'actual traveling expenses' in going to and from their respective places of residence to attend the sessions of the court. It has been the universal practice for that period of time to allow the members and officers of that court, not only their railroad fare, but also their hotel bills during the time of their attendance on the sessions. The phrase quoted has always been understood to include these expenses. Section 3702 of the Political Code was enacted in its present form in 1887, and the same practice has prevailed ever since that time with relation to the traveling expenses of the members of the board of equalization. The legislature has undoubtedly acquiesced in this interpretation, since the law has remained unchanged. It would seem that it is too late to claim the technical and literal construction now contended for. Furthermore, it is not in accordance with the common use of the phrase 'traveling expenses.' It is common knowledge that in commercial affairs agents are traveling constantly under an arrangement with their principals that their traveling expenses are to be paid. Often they are required to remain in one place for considerable periods of time in the transaction of the business, but it is commonly understood that their hotel bills are a part of the traveling expenses, unless some provision of the contract shows a different meaning."

Section 155 of the Civil Code, reads: "Husband and wife contract towards each other obligations of mutual respect, fidelity, and support." Section 156 of the Civil Code declares: "The husband is the head of the family. He may choose any reasonable place or mode of living, and the wife must conform thereto." Irrespective of the code provisions, the common law casts the duty of support, which includes meals and a place for the wife to sleep, or a room to occupy, upon the husband, or as said in 13 Cal. Jur. 804: "While the husband and wife undertake toward each other obligations of mutual support, primarily the husband is the breadwinner and assumes the responsibility for the support of the family. Independently of the statute, he is bound to support her according to his means and station, even though she is insane or has ample means of her own." This principle of law is set forth in the opinion of the supreme court in the case of *Shebley* v. *Peters,* 53 Cal. App. 288 [200 Pac. 364]. In speaking of the claims of the wife and children upon the husband, the supreme court there said: "They are entitled to demand of him a support in accordance with his station in life. Such support it is the right of every wife and minor child to receive from the husband and father, even if they are not dependent upon him at all, but have ample means of their own." This primary liability fixed by the common law and its application to particular cases must be read in connection with sections 155 and 171 of the Civil Code. Section 155, as hereinbefore set forth, makes the obligations resting upon the husband and wife mutual in relation to respect, fidelity, and support. Read by itself, this section would leave no primary liability upon the husband, but would place them upon an equal footing. The next section, however, of the Civil Code names the husband as the head of the family, and section 171, *supra,* particularly points out and fixes the liability of the wife. It is there said: "The separate property of the wife is liable for her own debts contracted before or after her marriage, but it is not liable for her husband's debts; provided, that the separate property of the wife is liable for the payment of debts contracted by the husband or wife for the necessaries of life furnished to them or either of them while they are living together; provided, that the provisions of the foregoing proviso shall not

apply to the separate property of the wife held by her at the time of her marriage or acquired by her by devise, succession, or gift, other than by gift from the husband, after marriage.'' This section, as applied to the case at bar, would render all of the salary earned under the contract liable for the necessaries of life furnished the petitioner and her husband, C. H. Nielsen. The latter portion of the section makes it impossible for the husband by any agreement to make a gift thereof to her of any property in which he would otherwise have an interest so as to escape such liability. This section has a present and immediate application. It does not relate to any expectancies or contingencies, as is provided for in section 176 of the Civil Code, or the statute relating to succession when husband or wife dies intestate. As said in .Leake v. Lucas, 65 Neb. 359 [62 L. R. A. 190, 91 N. W. 374] : ''There can be no doubt but that the defendant would be liable as surety for her husband for the necessary food furnished the family, himself included.'' In the case at bar, the contract of employment between the husband and the wife would, if carried into effect, increase the pecuniary responsibility of the person thus made a surety for family supplies and constitutes a property interest safeguarding the county school superintendent to the extent of the sum paid under the contract. In 13 A. L. R. 1396 is an extended note setting forth what has been held necessaries by a number of courts having statutes similar to our own, making the separate property of the wife acquired after marriage liable for household necessaries. These cases include instances where medical attendance, food, clothing, and furniture have been held as coming within the term ''necessaries,'' even including wearing apparel purchased and worn by the husband alone. (Gilman v. Matthews, 20 Colo. App. 170 [77 Pac. 366].) Also, medical services rendered to the husband personally are a family expense within the meaning of the statute, making the expenses of the family chargeable upon the property of the wife. This latter item of necessaries coming within the statutory provision is set out at length in Evans v. Noonan, 20 Cal. App. 288 [128 Pac. 794]. A number of cases are there cited as to the holding of what constitutes necessaries of life and so chargeable against a wife's separate earnings. Section 171 of the Civil Code is

also interpreted as well as applied. The court there said: "It will be observed that the section as amended in 1905 (Stats. 1905, p. 206) excludes from liability her separate property held by her at the time of her marriage and that acquired by her by devise or succession after marriage, and, therefore, the application of the provisions of the section is necessarily limited to such of her separate property only as she may have acquired after her marriage by any other means than by devise or succession, such property, for instance, as her earnings or that which she might acquire by gift after her marriage. . . . But whatever might have been the legislative motive prompting the enactment of the amendment, it is plainly manifest that the intention was thus to make the wife jointly liable with her husband for the payment of debts contracted by either or both for necessaries furnished to either or both while they are living together, restricting, however, the wife's liability by limiting the right to take her separate property in execution of a judgment for a debt so contracted to such of her separate property only as she may have acquired after marriage otherwise than by devise or succession."

The foregoing authorities lead us unavoidably to the conclusion that C. H. Nielsen, as the husband of the petitioner, had a direct and indirect pecuniary interest in the contract which he was purporting to execute as superintendent of schools of the county of Butte. The contract directly adds a sum of money for the support of the wife and indirectly for his own support. We also think it is apparent that section 158 of the Civil Code, empowering husbands and wives to contract with each other and enter into business engagements respecting property, etc., which either might, if unmarried, relates to cases where the husband is acting for himself and in his own right and individual capacity, and not as the agent or trustee of some other person or of the general public. In such cases the contract on the part of the husband which he is authorized to make must be such in which he has neither a direct nor an indirect pecuniary interest, even though the confidential relation between husband and wife might not prohibit the making of the contract.

The county superintendent of schools is a public officer and every public officer is an agent of the county, municipality

or state responsible for his election or appointment, and as such officer charged with the public trust of performing the duties of the office for the public interests. (21 Cal. Jur. 823.) And, as said in section 67 of the same chapter, page 886 of the same volume, "the rule has long been recognized that any contract by an officer which interferes with the unbiased discharge of his duty to the public in the exercise of his office, is against public policy and void. Acting upon the principle that no person can, at one and the same time, faithfully serve two masters representing diverse or inconsistent interests with respect to the service to be performed, the legislature has prohibited the making of such contracts." In *Hay* v. *Long*, 78 Wash. 616 [139 Pac. 761], the supreme court of Washington, in holding invalid a lease executed to a wife by her husband, while acting as agent for another, used language which we think pertinent to this case: "The lease made by Athow was a lease to the community, and was therefore a lease to himself. But if it were not so, it has been held that a contract made by an agent with his wife is voidable at the instance of a *cestui que trust* or a principal, 'not on the ground of coverture, but of her relationship to the trustee. It would be evidence of unfairness quite as much as if the sale were made to the trustee himself, and falls within the spirit of the rule which forbids his own purchase.' *Dundas' Appeal*, 64 Pa. 325. The doctrine is familiar, and has been often recognized by this court, that an agent cannot, either directly or indirectly, have an interest in the sale of the property of his principal, which is within the scope of his agency, without the consent of his principal, freely given, after full knowledge of every matter known to the agent which might affect the principal. *Coat* v. *Coat*, 63 Ill. 74; *Ebelmesser* v. *Ebelmesser*, 99 Ill. 548; *Ziegler* v. *Hughes*, 55 Ill. 288; *Hughes* v. *Washington*, 72 Ill. 85. It is of no consequence in such case that no fraud was actually intended, or that no advantage was in fact derived from the transaction by the agent. Kerr on Fraud and Mistake (Bump's Ed.) 173, 174; Perry on Trusts, par. 206; Story's Eq. Jur., par. 315; Bispham's Eq. (2d ed.), par. 238, p. 299. The rule is not merely remedial of wrong actually committed. It is intended to be preventive of wrong. Public policy requires as was tersely and forcibly

said by the Chief Justice in *Staats* v. *Bergen,* 17 N. J. Eq. 554, that 'a trustee may not put himself in a position in which to be honest must be a strain on him.' "

In *Tyler* v. *Sanborn,* 128 Ill. 136 [15 Am. St. Rep. 97, 4 L. R. A. 218, 21 N. E. 193], the supreme court of Illinois held invalid a sale of land made to a wife by a husband, while acting as agent for another, even though the purchase was made from the separate funds belonging to the wife. After holding that the law which forbids such action on the part of the agent is not only remedial but preventive, when intended to promote honest and fair dealing in the faithful discharge of the trust imposed upon an agent, and, further, in order to shield the agent from the temptation of serving his own interest, while under legal obligations to serve the interests of another, the court in that case says: "The husband is still the head of the family; and the expenses of the family and of the education of the children are, by section 15 of the statute in relation to husband and wife, charged upon the property of both husband and wife, or of either of them, in favor of creditors. Rev. Stats. 1874, p. 577. Upon the death of the wife, intestate, without children surviving, the husband inherits one-half of her real estate (Rev. Stats. 1874, p. 39, par. 1); and in any event, upon her death, he is entitled to dower in her real estate; hence, the husband still has a pecuniary interest, greater or less, as circumstances may vary, in all the real estate of which his wife may be owner during coverture. There is, moreover, apart from this pecuniary interest, an intimacy of relation and affection between husband and wife, and of mutual influence of the one upon the other for their common welfare and happiness, that is absolutely inconsistent with the idea that the husband can occupy a disinterested position as between his wife and a stranger in a business transaction. He may, by reason of his great integrity, be just in such a transaction; but unless his marital relations be perverted, he cannot feel disinterested—and it is precisely because of this feeling of interest that the law forbids that he shall act for himself in a transaction with his principal."

To the same effect is the ruling laid down in Cal. Jur. 978, relating to officers of a municipal corporation that they must not use their official position for their own benefit, or for

75 Cal. App.—44

the benefit of another, or for the benefit of anyone except the corporation itself, and may not represent a corporation in any contract or contracts in which they are personally interested, in obtaining an advantage at the expense of the municipality, for in such cases the city would not have the benefit of their unbiased judgment. In the case at bar the county of Butte was entitled to the unbiased judgment of the county school superintendent. Here we have contained not merely the personal and confidential relation existing between husband and wife, but also the pecuniary advantage which was being gained by the husband by reason of the contract which we have heretofore specified. In *Nuckols* v. *Lyle,* 8 Idaho, 589 [70 Pac. 401], the supreme court of Idaho held void a contract of employment of a school-teacher by her husband who was a member of the school board making the employment. In that case there was no question concerning the agreement as to the separate property character of the salary to be earned, but, in so far as the question of support, etc., is involved in the contract under consideration, the case of *Nuckols* v. *Lyle* is applicable.

This court in the case of *Stockton Plumbing & Supply Co.* v. *Wheeler,* 68 Cal. App. 592 [229 Pac. 1020], in an opinion written by Justice Hart touching the question of contracts in which officers are interested has said: ''The personal interest of an officer in a contract made by him in his official capacity may be indirect only, still such interest would be sufficient to taint the contract with illegality. If this interest in the contract is such as would tend in any degree to influence him in making the contract, then the instrument is void because contrary to public policy, the policy of the law being that a·public officer in the discharge of his duties as such should be absolutely free from any influence other than that which may directly grow out of the obligations that he owes to the public at large.''

The rules of law which we have hereinbefore set forth are also fully stated in Dillon on Municipal Corporations, volume 2, fifth edition, section 773.

By reference to the contract which we are considering it will be seen that the consideration moving the parties to enter into the same is not severable, the salary and the traveling expenses are both intermingled and constitute an inherent

and essential part thereof, hence, if either one of said items comes within the rules which we have set forth, the whole contract is vitiated. Section 1608 of the Civil Code says: "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Section 1607 of the Civil Code requires that the consideration of a contract must be lawful within the meaning of section 1667 of the Civil Code. That section requires that in order for a contract to be lawful it must be one not contrary to an express provision of law, nor contrary to the policy of express law, although not expressly prohibited, nor otherwise contrary to good morals. These provisions, as we have set forth, are violated by both of the items of consideration entering into the contract. These sections of the code are dealt with in the case of *Berka* v. *Woodward*, 125 Cal. 119 [73 Am. St. Rep. 31, 45 L. R. A. 420, 57 Pac. 777], which case had to do with a contract attempted to be entered into by a member of a city council. This case follows the rule applicable in the case at bar and cites a large number of authorities having to do with such attempted violations of duty by city and county officers.

[1] For the reasons which we have heretofore given, it must be held that the purported contract entered into between the petitioner on the one part and her husband, as county school superintendent on the other part, is prohibited by law and contrary to public policy.

The judgment of the trial court is affirmed.

Hart, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 18, 1926.