TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 92-1210 |
| of | : | |
| | : | JUNE 8, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE ROBERT G. BEVERLY, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

Does a city council's approval of the renewal, sale, assignment, or transfer of a cable television franchise held by a city council member constitute the "making of a contract" prohibited by Government Code section 1090?

CONCLUSION

A city council's approval of the renewal, sale, assignment, or transfer of a cable television franchise held by a city council member constitutes the "making of a contract" but would not be prohibited by Government Code section 1090 if the rule of necessity is applicable in the particular circumstances.

ANALYSIS

We are advised that in December of 1984 a city granted a franchise for the construction, operation, and maintenance of a cable communication system within the city. In April of 1992, the grantee of the franchise was elected to the city council. Under the terms of the franchise agreement, the franchise will expire in December of 1994 unless renewed by the parties on mutually agreeable terms and conditions following a determination by the city that the grantee has satisfactorily performed his obligations under the franchise during the primary term. Approval of the city council is needed for any rate increases and for the sale, transfer, lease, or assignment of the franchise. The franchise in question is currently the only one providing cable television service in the city.

We are asked to determine whether the interaction between the city council and the grantee councilman as to either the renewal or sale of the franchise would constitute the "making

of a contract" prohibited by Government Code section 1090.[1] We conclude that the renewal or sale of the franchise constitutes the making of a contract for purposes of the statute; however, the statutory prohibition would not be applicable if the "rule of necessity" applied in the particular circumstances.

Section 1090 provides in pertinent part:

"Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."

Section 1090 is concerned with financial interests, other than remote or minimal interests, which would prevent officials from exercising absolute loyalty and undivided allegiance in furthering the best interests of their public agencies. (See *Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 569.)[2] Moreover, when section 1090 is applicable to one member of the governing body of a public entity, the proscription cannot be avoided by having the interested member abstain; the entire governing body is precluded from entering into the contract. (*Thomson* v. *Call* (1985) 38 Cal.3d 633, 647-649; *Stigall* v. *City of Taft, supra*, 58 Cal.2d at p. 569; *City of Imperial Beach* v. *Bailey* (1980) 103 Cal.App.3d 191, 197; 70 Ops.Cal.Atty.Gen. 45, 48 (1987); 69 Ops.Cal.Atty.Gen. 102, 104 (1986).) A contract which violates section 1090 is void. (*Thomson* v. *Call, supra*, 38 Cal.3d at p. 646.)

In determining whether section 1090 is applicable with respect to the circumstances presented, we note that the granting by a local government of a cable franchise or license is a legislative act and establishes a contractual relationship between the parties. (*City of Lafayette* v. *American Television & Communication Corp.* (1979) 98 Cal.App.3d 27, 31; *Orange County Cable Communications Co.* v. *City of San Clemente* (1976) 59 Cal.App.3d 165, 171; *Monarch Cablevision, Inc.* v. *City Council* (1966) 239 Cal.App.2d 206, 210; 66 Ops.Cal.Atty.Gen. 418, 421-422 (1983).) Stated otherwise, a franchise when accepted by the grantee results in a valid contract binding both the franchise holder and the public entity granting the franchise. (*County of L.A.* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 384-386.) Thus the prohibition of section 1090 would clearly prohibit a current member of a city council from obtaining a cable television franchise from the city during his term of office. (See *Thomson* v. *Call, supra*, 38 Cal.3d at p. 645; *Neilsen* v. *Richards* (1925) 75 Cal.App. 680, 691; 73 Ops.Cal.Atty.Gen. 191, 194-195 (1990); 65 Ops.Cal.Atty.Gen. 305, 307-309 (1982).)

On the other hand, it is equally clear that the terms of section 1090 would not prevent the grantee of an existing cable television franchise from becoming a member of the grantor city council. The grantee would not have had the dual roles at the time the contract was executed. (See *Eldridge* v. *Sierra View Local Hospital District* (1990) 224 Cal.App.3d 311, 321 ["Because appellant had an existing contract of employment at the time she was elected, she was not required by the operation of section 1090 to resign either her job or a position on the board"]; *City of Imperial Beach* v. *Bailey, supra*, 103 Cal.App.3d at pp. 194-196; 73 Ops.Cal.Atty.Gen., *supra*, 195; 69 Ops.Cal.Atty.Gen., *supra*, 107-108; 65 Ops.Cal.Atty.Gen., *supra*, 306-308.)

---

1.   All section references hereafter to the Government Code are by section number only.

2.   Provisions relating to "remote interests" (§ 1091) and "non-interests" (§ 1091.5) are not germane to the contractual matters we deal with here.

Here we must determine whether the prohibition of section 1090 is triggered by events occurring after the granting of the franchise (the original contract) and after the election of the grantee to the city council.

A. Renewal of the Franchise

In *City of Imperial Beach* v. *Bailey*, *supra*, 103 Cal.App.3d 191, the operators of a concession stand on a municipal pier sought a renewal of the concession contract with the city pursuant to the contract. Shortly before giving notice of their intent to renew, one of the concession operators was elected to the city council. The city refused to renew the contract on the grounds that the renewal would constitute the making of a contract in violation of section 1090 and that the attendant adjustment of the rate to be paid by the concession holder required a "negotiation" prohibited by section 1090. In upholding the city's position, the court rejected arguments by the concession holder that the city could unilaterally set the new rate, with the affected council member abstaining, and that the renewal was akin to a ministerial act because a right to renew had vested in the concessionaire prior to her election to the city council. The court stated:

> ". . . Assuming City sets the rate unilaterally, the Council must still approve it. Since Hazel is a member of the Council, this is prohibited by section 1090, even if she abstains from voting. It is not her participation in the voting which constitutes the conflict of interest, but her potential to do so (*Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 211).
>
> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> ". . . Whether the right to exercise the option vested prior to Hazel's election to the Council, the fact still remains to exercise the option at the present time Hazel, as a Council member, would have to affirm the contract and determine the new monthly rate. This she cannot do under section 1090." (Id., at pp. 195-196.)

The court further noted that "the final execution of the contract and its affirmation by the council would not be the only time when a conflict of interest may be presented." (Id., at p. 196.) Quoting from one of its prior decisions, the court pointed out that "`the negotiations, discussions, reasoning, planning, and give and take which go beforehand in the making of a decision to commit oneself must all be deemed to be a part of the making of an agreement in the broad sense . . . .'" (Ibid.) It concluded that "the trial court properly found that the exercise of the option to renew Concession's contract was a `making' of a contract prohibited by Government Code section 1090 as long as Hazel Bailey is a member of the council." (*Id.*, at p. 197.)

In the matter under consideration here, the same principles apply as regards the renewal of the franchise. Whether the renewal involves the renegotiation of the contract or a mere affirmation thereof, the potential for the franchise holder to participate in the voting on the renewal constitutes the conflict of interest. As stated in *Thomson* v. *Call*, *supra*, 38 Cal.3d at p. 649: "Mere membership on the board or council establishes the presumption that the officer participated in the forbidden transaction or influenced other members of the council. [Citations.]" Application of section 1090 would thus cause the renewal to fail, and, in the absence of renewal, the franchise agreement would expire by its own terms. Any subsequent attempt by the city council and the

franchise holder to enter into a new agreement while the franchise holder remained a member of the council would be void.[3/]

However, what is known as the "rule of necessity" may be applicable here to allow renewal of the franchise by the council member. This rule was recently summarized by the court in *Eldridge* v. *Sierra View Local Hospital District*, *supra*, 224 Cal.App.3d 311:

> "The rule of necessity provides that a governmental agency may acquire essential goods or services despite a conflict of interest, and in nonprocurement situations it permits a public officer to carry out the essential duties of his/her office despite a conflict of interest where he/she is the only one who may legally act. The rule ensures that essential government functions are performed even where a conflict of interest exists. [Citations.]" (Id., at p. 321.)

As mentioned in *Eldridge*, there are two different situations in which the rule of necessity has been applied. The first facet of the rule was explained in greater detail in our opinion in 65 Ops.Cal.Atty.Gen., *supra*, 310:

> "The contracting officer . . . would be the sole source of supply of such essential supply or service, and also would be the only official . . . permitted by law to execute the contract. Public policy would authorize the contract despite this conflict of interest."

In 59 Ops.Cal.Atty.Gen. 604 (1976), we stated:

> "We do not attempt to determine all the ramifications of the doctrine of necessity in the case of a contractual transaction. This office has assumed its existence in extreme cases of emergency, or where no alternative source of supply of goods or services existed. [Citations.]
>
> "Interestingly, in above types of situations, the necessity is caused by the need to *obtain* something for the governmental unit, not by the mere fact that only that particular person or body may act with regard to the transaction." (Id., at p. 619, fn. 18.)

A rule of necessity situation involving the lack of an alternative source of supply of services was presented in 42 Ops.Cal.Atty.Gen. 151, 156 (1963):

> ". . . In a few counties of small population there is only one mortuary and the funeral director is the coroner. Coroner cases in these counties are handled by the coroner's private mortuary and generally the accompanying funeral business is handled by that mortuary also. Since the coroner has no real choice about where to have the body held, it is not an abuse of his office to assign the body to his mortuary. *Cf. Capital Gas Co.* v. *Young*, 109 Cal. 140 (1895) (public utility required to furnish

_____

3. In *Finch* v. *Riverside and Arlington Railway Co.* (1891) 87 Cal. 597, a streetcar company was granted a franchise to provide streetcar service to the City of Riverside. Because one of the subscribers to the stock of the company was also a city trustee who took an active part in the proceedings in relation to the franchise, the court held that the franchise was void and that the defendant company thereby became a mere intruder upon the street and was subject to ejectment.

gas to city can collect on bill despite otherwise prohibited interest of mayor); *Hotchkiss* v. *Moran*, 109 Cal.App. 321, 323-324 (1930) (electric company) . . . ."

As we noted in 69 Ops.Cal.Atty.Gen., *supra*, 102, "the `rule of necessity' is to reflect actual necessity after all possible alternatives have been explored."  (Id., at p. 109, fn. 6.)

It is conceivable that this facet of the rule of necessity may be applied to the present circumstances.  The cable television industry is one affected with the public welfare, providing services that may be considered "essential" to its subscribers (see *Santa Barbara County Taxpayer Assn.* v. *Board of Supervisors* (1989) 209 Cal.App.3d 940, 949; *Cox Cable San Diego, Inc.* v. *City of San Diego* (1987) 188 Cal.App.3d 952, 963, 967; 66 Ops.Cal.Atty.Gen., *supra,* 421-422); it is highly regulated by the federal government (see 47 U.S.C. § 521 et seq. [Cable Communications Policy Act of 1984, as amended by the Cable Television Consumer Protection and Competition Act of 1992]), the state (see §§ 53054-53056, 53066-53066.5), and local governments (see *Cox Cable San Diego, Inc.* v. *City of San Diego, supra,* 188 Cal.App.3d at p. 965; *City of Lafayette* v. *American Television & Communication Corp., supra,* 98 Cal.App.3d at p. 32); and the services are similar to the delivery of electricity, gas, and other public utilities (see Pub. Util. Code, §§ 215.5, 768.5, 10001; 54 Ops.Cal.Atty.Gen. 135, 137-138 (1971)).  The concession business in *City of Imperial Beach* v. *Bailey, supra,* 103 Cal.App.3d 191 (selling bait, fishing tackle, and refreshments) may be distinguished as not involving the sole source of an essential supply or service.

The issue of whether a public official provides the sole source of a particular service or supply presents a question of fact.  Here, to be considered is whether the services are essential to the city as well as to its residents, and whether any other cable television services would be available to the city.  Depending upon the circumstances presented, the rule of necessity may be applicable so as to allow the renewal of the franchise held by the city council member which would otherwise be subject to section 1090's prohibition.

B.  Transfer of the Franchise

Turning to the question of the application of section 1090 to the sale of the councilman's franchise, we find that under the terms of the franchise agreement, a sale or other transfer is subject to the approval of the city.  Without such approval, no transfer may occur.  The council's approval is just as necessary to the "making" of the contract, whether it is a contract of sale, assignment, or other transfer, as is the consent of the councilman and the new owner.  The transfer of the franchise will necessarily involve the sale of the councilman's assets for which he will be compensated by the new owner.  We view the entire exchange, with the council's approval of the franchise agreement transfer, as one interrelated transaction for purposes of section 1090.  (See *Thomson* v. *Call, supra,* 38 Cal.3d at p. 645.) We conclude that the council member will have a financial interest under the terms of section 1090 in the council's "contract" approving the transfer.

It would be anomalous to conclude, however, that the city councilman in question may only resign from office in order to avoid the proscription of section 1090.  Even in *City of Imperial Beach* v. *Bailey, supra,* 103 Cal.App.3d 191, the councilwoman was given a choice between resigning from office or selling her business:

"In the present case, as was the case in *City Council* v. *McKinley, supra,* it is conceded Hazel Bailey's integrity is above reproach and we sympathize with her position of having to choose between remaining on the Council or continuing as owner of Concession.  However, the purpose of Government code section 1090 is not only to strike at actual impropriety, but also to strike at the appearance of impropriety."  (Id., at p. 197.)

In *Thomson* v. *Call, supra,* 38 Cal.3d 633, the Supreme Court viewed resignation from office as an inappropriate single remedy: "Resignation from office does not, however, appear to be a viable alternative; indeed it may be counter to the public interest in retaining competent public officers." (Id., at p. 650, fn. 25; see 73 Ops.Cal.Atty.Gen., *supra*, 195-196.)

Here, we view the second facet of the rule of necessity as being applicable to the councilman's sale of the franchise. Under this facet of the rule, an officer or board may perform necessary public duties without violating section 1090 if no one else may legally act. (See *Caminetti* v. *Pac. Mutual Life Insurance Co.* (1943) 22 Cal.2d 344, 366 [insurance commissioner may act against delinquent insurer in which he holds a policy]; 69 Ops.Cal.Atty.Gen. 102 (1986) [school board may enter into a memorandum of understanding with a teacher's association even though one of the trustees is married to a teacher]; 65 Ops.Cal.Atty.Gen. 305 (1982) [superintendent may enter into a memorandum of understanding with school employees although married to one of the employees].) Assuming section 1090 allows termination of the proscribed conflict in addition to resignation from office, we believe that the councilman in question may sell or otherwise transfer his franchise to avoid his financial conflict. Since such termination would require approval by the council, the council's action would constitute a public duty exempt from the section 1090 prohibition under the second facet of the rule of necessity.

Finally, we caution that a violation of section 1090 may result in substantial penalties and that the courts have not read its provisions in a narrow or restrictive manner. Anyone who willfully violates section 1090 is punishable by a fine of not more that $1,000, "or by imprisonment in the state prison, and is forever disqualified from holding any office in this state." (§ 1097.) In *Thomson* v. *Call, supra,* 38 Cal.3d 633, a city mayor was required to pay the city $258,000 as a result of violating section 1090 even though he had acted upon the advice of the city attorney, actual fraud or dishonesty was not established in the case, and it was assumed that the contract was fair, just, and equitable to the city. (Id., at pp. 648-650.) Even if we were to conclude that the rule of necessity is applicable in a particular situation, a court may conclude otherwise.[4/]

In answer to the question presented, therefore, we conclude that a city council's approval of the renewal, sale, assignment, or transfer of a cable television franchise held by a city council member constitutes the "making of a contract" but would not be prohibited by section 1090 if the rule of necessity is applicable in the particular circumstances.

\* \* \* \* \*

---

4. Of course, in any event, the city council member himself may not vote on the approval of the renewal, sale, assignment, or transfer of the franchise when it comes before the council. Under the Political Reform Act of 1974 (§§ 81000-91015), a public official may not "make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest" (§ 87100). Section 87103 specifies that "[a]n official has a financial interest in a decision . . . if . . . the decision will have a material financial effect . . . on . . . [a]ny source of income . . . received by or promised to the public official within 12 months prior to the time when the decision is made." If the councilman renews the franchise or receives compensation for its transfer, he would be subject to these statutory terms. The Fair Political Practices Commission has promulgated extensive regulations and provides written advice to public officials on these statutory requirements. (See 70 Ops.Cal.Atty.Gen., *supra*, 46.)